1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10
11
12
13
14
15

NANCY COGGESHALL,                                )
                                                 )
                      Plaintiff(s),              )
                                                 )
v.                                               )
                                                 )
NANCY A. BERRYHILL, ACTING                       )
COMMISSIONER OF SOCIAL SECURITY,                 )
                                                 )
                      Defendant(s).              )
_____ )

Case No. 2:17-cv-01299-KJD-NJK

REPORT AND RECOMMENDATION

(Docket Nos. 18, 22, 27)

16      This case involves judicial review of administrative action by the Commissioner of Social

17 Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to

18 Titles II and XVI of the Social Security Act.  Currently before the Court is Plaintiff's Motion for

19 Reversal and/or Remand.  Docket No. 18.  The Commissioner filed a response in opposition and a

20 Cross-Motion to Affirm.  Docket Nos. 22-23.  Plaintiff filed a reply.  Docket No. 24; *see also* Docket

21 No. 25 (errata).  This action was referred to the undersigned magistrate judge for a report of findings and

22 recommendation.

23      This matter is properly resolved without a hearing.  *See* Local Rule 78-1.  Accordingly, the

24 motion for a hearing (Docket No. 27) is **DENIED**.

25 **I.     STANDARDS**

26      A.     Judicial Standard of Review

27      The Court's review of administrative decisions in social security disability benefits cases is

28 governed by 42 U.S.C. § 405(g).  *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  Section

405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

2

1

### B.    Disability Evaluation Process

2    The individual seeking disability benefits bears the initial burden of proving disability. *Roberts*

3 *v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the

4 "inability to engage in any substantial gainful activity by reason of any medically determinable physical

5 or mental impairment which can be expected . . . to last for a continuous period of not less than 12

6 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical

7 evidence" in support of his claim for disability. *See, e.g.*, 20 C.F.R. § 404.1514. If the individual

8 establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show

9 that the individual can perform other substantial gainful work that exists in the national economy.

10 *Reddick*, 157 F.3d at 721.

11    The ALJ follows a five-step sequential evaluation process in determining whether an individual

12 is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). If

13 at any step the ALJ determines that he can make a finding of disability or nondisability, a determination

14 will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003);

15 *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the ALJ to determine

16 whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§

17 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves

18 doing significant physical or mental activities usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b),

19 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made.

20 If the individual is not engaging in SGA, then the analysis proceeds to the second step.

21    The second step addresses whether the individual has a medically determinable impairment that

22 is severe or a combination of impairments that significantly limits him from performing basic work

23 activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not

24 severe when medical and other evidence establish only a slight abnormality or a combination of slight

25 abnormalities that would have no more than a minimal effect on the individual's ability to work. 20

26

27

28

C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.[1] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). The residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 16-3p. An ALJ will consider the claimant's statements regarding the intensity, persistence, and limiting effects of symptoms, and will further evaluate whether the statements are consistent with objective medical evidence and the other evidence. SSR 16-3p. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

---

[1] SSRs constitute the Social Security Administration's official interpretations of the statute it administers and its regulations. *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1224.

The fourth step requires the ALJ to determine whether the individual has the residual functional capacity to perform his past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the individual has the residual functional capacity to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If he is able to do other work, then a finding of not disabled is made.  Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    BACKGROUND**

    A.    Procedural History

On June 12, 2013, Plaintiff filed an application for supplemental security income alleging that she became disabled on July 21, 2012. *See, e.g.*, Administrative Record ("A.R.") 194-202.  Plaintiff's claim was denied initially on November 18, 2013, and upon reconsideration on June 4, 2014.  A.R. 71, 103-07, 111-13.  On July 25, 2014, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  A.R. 120-22.  On April 17, 2015, Plaintiff filed a request that the Commissioner consider whether she was eligible for disability insurance benefits.  A.R. 174.  On May 20, 2015, Plaintiff amended her onset date to June 12, 2013.  A.R. 294.  On June 1, 2015, Plaintiff, Plaintiff's attorney, and a vocational expert appeared for a hearing before ALJ Cynthia Hoover.  *See* A.R. 43-70.  On September 15, 2015, the ALJ issued an unfavorable decision finding that Plaintiff had not been under

1    a disability, as defined by the Social Security Act, through the date of the decision.  A.R. 25-42.  On

2    March 13, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals

3    Council denied Plaintiff's request for review.  A.R. 1-6.

4         On May 9, 2017, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. §

5    405(g).  *See* Docket No. 1.

6         B.    The Decision Below

7         The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R.

8    §§ 404.1520 and 416.920.  A.R. 25-42.  At step one, the ALJ found that Plaintiff meets the insured status

9    requirements of the Social Security Act through December 30, 2018, and has not engaged in substantial

10   gainful activity since June 12, 2013.  A.R. 30.  At step two, the ALJ found that Plaintiff has the

11   following severe impairments: degenerative changes of the cervical spine with moderate right

12   neuroforaminal narrowing from C4 through C6 and obesity.  A.R. 30-32.  At step three, the ALJ found

13   that Plaintiff does not have an impairment or combination of impairments that meets or medically equals

14   the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  A.R. 33.

15        The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined

16   in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with: lifting and carrying 20 pounds occasionally and 10

17   pounds frequently; sitting, standing, and/or walking 6 hours in an 8-hour workday; but that she must

18   avoid concentrated exposure to extreme heat, extreme cold, and hazards such as dangerous machinery

19   and heights.  A.R. 33-36.  At step four, the ALJ found Plaintiff is capable of performing her past relevant

20   work as a marketing coordinator, marketing business owner, and office manager.  A.R. 37.  Based on

21   all of these findings, the ALJ found Plaintiff not disabled and denied the applications for a period of

22   disability and disability insurance benefits and supplemental security income.  *See id.*

23   **III.    ANALYSIS AND FINDINGS**

24        Plaintiff challenges the Commissioner's decision on several grounds.  First, Plaintiff argues that

25   the ALJ erred in failing to find Plaintiff's Lyme disease to be a severe impairment.  Second, Plaintiff

26   argues that the ALJ erred in giving no weight to the opinion of Melanie Gisler.  Third, Plaintiff argues

27   that the ALJ erred in giving no weight to portions of the opinion of Orlandis Wells.  Fourth, Plaintiff

28   argues that the ALJ erred in giving little weight to the opinion of Gina Abbeduto.  Fifth, Plaintiff argues

1   that the ALJ erred in giving significant weight to Khalid Kamal.  Sixth, Plaintiff argues that the ALJ

2   erred in finding Plaintiff's testimony as to her limitations not fully credible.  Seventh, Plaintiff argues

3   that the ALJ erred in finding third-party testimony not fully credible.  The Court will address each

4   argument below in turn.

5           A.      Lyme Disease as a Severe Impairment

6           Plaintiff argues that the ALJ erred at step two of her analysis by not finding Plaintiff's Lyme

7   disease to constitute a severe impairment.  Docket No. 18-1 at 19-21.  The Commissioner counters that,

8   *inter alia*, any error was harmless.  Docket No. 22 at 5-6.  The Commissioner has the better argument.

9           Plaintiff bears the burden of establishing that an error is harmful.  *Molina v. Astrue*, 674 F.3d

10  1104, 1101 (9th Cir. 2012).  "[T]he Ninth Circuit has held when the ALJ has resolved Step Two in a

11  claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant

12  at Step Two."  *Hase v. Colvin*, 207 F. Supp. 3d 1174, 1180 (D. Or. 2016) (citing *Burch v. Barnhart*, 400

13  F.3d 676, 682 (9th Cir. 2005)); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (any error

14  at step two in omitting a limitation was harmless when that limitation was considered at step four).  In

15  this case, the ALJ found in Plaintiff's favor at step two and proceeded to consider her Lyme disease as

16  she conducted the sequential analysis.  *See* A.R. 30, 32, 34.  Hence, any error by the ALJ in not finding

17  Plaintiff's Lyme disease to be severe at step two was harmless.

18          B.      Melanie Gisler

19          Plaintiff next argues that the ALJ erred in discounting the opinion of her treating physician, Dr.

20  Gisler.  Docket No. 18-1 at 21-22.  The Commissioner counters that the ALJ properly discounted Dr.

21  Gisler's opinion as so extreme as to be implausible, lacking medical support, inconsistent with Plaintiff's

22  minimal treatment for Lyme disease, and inconsistent with Plaintiff's daily activities.  Docket No. 22

23  at 6-9.  The Commissioner has the better argument.

24          A treating physician's medical opinion as to the nature and severity of an individual's impairment

25  is entitled to controlling weight when that opinion is well-supported and not inconsistent with other

26  substantial evidence in the record.  *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

27  Even when not controlling, such opinions are entitled to deference and must be weighed properly

28  pursuant to applicable regulations.  *See, e.g.*, *id.*  Nonetheless, the opinion of a treating physician is not

1   necessarily conclusive as to the existence of an impairment or the ultimate issue of a claimant's

2   disability. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). If a treating doctor's

3   opinion is contradicted by another doctor, the ALJ may reject the treating doctor's opinion by providing

4   "specific and legitimate reasons" supported by substantial evidence in the record. *See, e.g.*, *Lester v.*

5   *Chater* 81 F.3d 821, 830 (9th Cir. 1995).

6        In this case, the ALJ found that, *inter alia*, "the limitations set forth in [Dr. Gisler's] opinion are

7   so extreme as to appear implausible which suggests patient advocacy and discredits the entire opinion."

8   A.R. 35. In Dr. Gisler's medical source statement, she indicates that in an 8-hour workday Plaintiff

9   could sit for no more than one hour, stand for no more than one hour, and walk for no more than one

10  hour. A.R. 549. The medical source statement also indicates that Plaintiff could not lift any object of

11  any weight, could not carry any object of any weight, could not bend, could not squat, could not crawl,

12  could not climb, and could not reach above shoulder level. A.R. 550. Moreover, the medical source

13  statement indicates that Plaintiff experienced those limitations since 2009 (or for roughly five years as

14  of the time of the report). A.R. 552. These limitations stand in stark contrast with the record. For

15  example, Plaintiff's own testimony revealed that she worked through 2013, goes shopping for up to three

16  hours at a time and up to three times per week, cooks her own meals, cleans her kitchen, does laundry,

17  washes dishes, vacuums and cleans her apartment, drives a car, sews, had been going to a meditation

18  group bi-monthly, and spends four to six hours sitting each day. *See, e.g.*, A.R. 52-57. The ALJ did not

19  err in finding Dr. Gisler's opinion so implausible that it be discounted in its entirety. *See, e.g.*, *Rollins*

20  *v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

21       Plaintiff also contends that the ALJ erred in her treatment of Dr. Gisler's opinion because her

22  decision indicates that there "are no treatment records from Dr. Gristler [sic] in the evidence of record,"

23  A.R. 35, even though the record does contain treatment notes from Dr. Gisler in relation to Lyme disease

24  testing, A.R. 457-70. Nonetheless, the ALJ elsewhere acknowledged Plaintiff's Lyme disease diagnosis,

25  A.R. 34, and the Commissioner counters that no showing has been made by Plaintiff that the notes

26  identified would change the outcome here, Docket No. 22 at 9. The Court finds that Plaintiff has failed

27  to show that any error on this basis was other than harmless given the ALJ's proper discounting of Dr.

28

1  Gisler's opinion based on the implausibility of the limitations set out therein as outlined above.  *See*

2  *Molina*, 674 F.3d at 1101 (the claimant bears the burden of establishing that an error is harmful).

3  　　　The ALJ did not err in discounting Dr. Gisler's opinion.

4  　　C.　　Orlandis Wells

5  　　　Plaintiff next argues that the ALJ erred in discounting part of the opinion of another treating

6  physician, Dr. Wells.  Docket No. 18-1 at 22-24.[2]  In particular, Plaintiff contends that the ALJ erred in

7  failing to articulate specific and legitimate reasons for discounting the standing, sitting, and manipulative

8  limitations identified by Dr. Wells because the ALJ failed to adequately account for Plaintiff's Lyme

9  disease.  *Id.*  The Commissioner counters that the ALJ properly discounted these portions of Dr. Wells'

10  opinion, and that Plaintiff's generalized assertions of possible limitations caused by Lyme disease do

11  not show otherwise.  Docket No. 22 at 9-10.  The Commissioner has the better argument.

12  　　　The ALJ rejected the above limitations because they were inconsistent with Plaintiff's own

13  testimony, including that she was able to work in 2013, run errands for three hours at a time, and could

14  sew.  A.R. 35.  Substantial evidence exists to support those findings, *see, e.g.*, A.R. 52, 56, 57, and an

15  ALJ may discount a treating physician's opinion when it is inconsistent with the Plaintiff's level of daily

16  activity, *see, e.g.*, *Rollins*, 261 F.3d at 856.  Plaintiff's submission of medical literature that Lyme disease

17  may impact the above limitations does not render it improper for the ALJ to have discounted Dr. Wells'

18  opinion as inconsistent with Plaintiff's testimony as to her daily activities.

19  　　　The ALJ did not err in discounting parts of Dr. Wells' opinion.

20  　　D.　　Gina Abbeduto

21  　　　Plaintiff next argues that the ALJ erred in discounting the findings of Gina Abbeduto, a licensed

22  clinical professional.  Docket No. 18-1 at 24-25.  The Commissioner counters that the ALJ properly

23  discounted Ms. Abbeduto's findings.  Docket No. 22 at 11-13.  As an initial matter, neither party has

24  _____

25  　　[2] To the extent Plaintiff is arguing that an ALJ is not permitted to accord weight to some aspects of
a medical opinion and reject other aspects, *see* Docket No. 18-1 at 22, the Court disagrees.  "Ninth Circuit
26  case law mak[es] clear that an ALJ is generally not required to adopt a physician's opinion in its entirety and
can properly reject portions of it."  *Hawley v. Berryhill*, Case No. 2:16-cv-01049-RFB-NJK, 2017 WL
27  2712939, at *5 (D. Nev. June 23, 2017) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753-54 (9th Cir. 1989)),
28  *adopted*, 2017 WL 3457108 (D. Nev. Aug. 9, 2017)).

accurately depicted the opinions of Ms. Abbeduto or the reasons articulated by the ALJ in discounting them. Ms. Abbeduto drafted two separate opinions, one dated October 20, 2013 that was co-signed by Dr. Richard Pruitt (A.R. 383) and one dated April 30, 2015 that was not co-signed by Dr. Richard Pruitt (A.R. 567-71). The ALJ discounted the 2013 opinion because the record reflected that at the time it was written Ms. Abbeduto had seen Plaintiff only twice and Dr. Pruitt had never seen Plaintiff. A.R. 32. The ALJ discounted the 2015 opinion because the severe limitations identified therein were not supported by Ms. Abbeduto's treatment records. *Id.* The ALJ also found that the 2015 opinion did not warrant significant weight because Ms. Abbeduto was not an acceptable medical source. *See id.* (finding that "this opinion" did not merit significant weight since Ms. Abbeduto was not an acceptable medical source). The ALJ did not err in her evaluation of Ms. Abbeduto's opinions.

First, with respect to the 2013 opinion, the record includes notes from visits with Ms. Abbeduto on October 1, 2013 and October 15, 2013. A.R. 521-22. On appeal, Plaintiff has identified no record of any visit predating the 2013 opinion in which Dr. Pruitt met with Plaintiff. Nor has Plaintiff provided records of any additional visits between Plaintiff and Ms. Abbeduto predating the 2013 opinion, instead indicating that any such records are "missing." *See* Docket No. 18-1 at 25; *see also* A.R. 582 (statement from Ms. Abbeduto submitted to Appeals Council). From this record, the Court cannot say that the ALJ lacked substantial evidence in finding that the 2013 opinion was written after only two visits with Ms. Abbeduto and after no visits with Dr. Pruitt. Moreover, the Ninth Circuit has recognized that it is proper to discount even a treating physician's opinion if he has not seen the patient sufficiently to develop a longitudinal picture. *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001). The ALJ did not err in discounting Ms. Abbeduto's 2013 opinion on this basis.

Second, with respect to the 2015 opinion, Plaintiff has failed to make any showing that the ALJ erred, let alone that the ALJ erred in a manner that was not harmless. *Ludwig v. Astrue* 681 F.3d 1047, 1054 (9th Cir. 2012) (social security appellants have the burden of demonstrating error, in addition to showing such error is not harmless). Here, Plaintiff indicates that "the record of evidence contains treatment notes from November 12, 2013 to March 3, 2015, constituting at least 29 additional visits." Docket No. 18-1 at 25. Absent from Plaintiff's argument, however, is any identification of any particular aspect of those treatment notes showing that the ALJ erred in finding the extreme limitations identified

by Ms. Abbeduto's 2015 opinion were not supported by the treatment notes.  Moreover, Plaintiff argues that Ms. Abbeduto was an acceptable medical source because Dr. Pruitt cosigned the 2013 opinion, *see* Docket No. 18-1; A.R. 383, but no argument or showing has been presented that such signature transforms Ms. Abbeduto into an acceptable medical source with respect to an opinion drafted two years later that Dr. Pruitt did not cosign, A.R. 571.  Plaintiff has otherwise failed to show that the ALJ erred in finding that Ms. Abbeduto is not an acceptable medical source.[3]  The ALJ did not err in discounting Ms. Abbeduto's 2015 opinion on these bases.

      The ALJ did not err in discounting Ms. Abbeduto's opinions.

      E.    Khalid Kamal

      Plaintiff next argues that the ALJ erred in giving significant weight to consultative examiner Dr. Khalid Kamal because he did not possess evidence of Lyme disease when he rendered his opinion.  Docket No. 18-1 at 25-26.  The Commissioner counters that Dr. Kamal examined Plaintiff and opined as to her limitations, and she has failed to provide any medical evidence showing disability limitations stemming from her Lyme disease diagnosis.  Docket No. 22 at 10.  The Commissioner has the better argument.  Plaintiff has failed to show that her submission of medical literature regarding possible limitations arising from Lyme disease rendered it improper for the ALJ to credit Dr. Kamal's findings based on his examination of Plaintiff.[4]

---

[3] A Ninth Circuit decision establishes a possibility that a nurse practitioner's opinion may be treated as an acceptable medical source if she was working under a physician's close supervision such that she was acting as the physician's agent. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).  Plaintiff points to no evidence demonstrating such a relationship between Ms. Abbeduto and Dr. Pruitt.  Moreover, in light of the subsequent removal of the regulatory provision relied upon in *Gomez*, the continued validity of this supervisory theory is unclear. *See Molina v. Astrue*, 674 F.3d 1104, 1111 n.3 (9th Cir. 2012) (noting repeal of regulation but declining to resolve continued validity of *Gomez*); *see also Casner v. Colvin*, 958 F. Supp. 2d 1087, 1097 (C.D. Cal. 2013) (finding that under current regulation, an "other source" cannot be treated differently "irrespective of her relationship to an acceptable medical source").

[4] Plaintiff also challenges the ALJ's reliance on other sources, such as Dr. Elsie Villaflor.  Docket No. 18-1 at 26-27.  Dr. Villaflor reviewed the medical record evidencing Plaintiff's Lyme disease diagnosis and expressly acknowledged that diagnosis.  A.R. 87, 93.  Plaintiff has failed to show that the ALJ's reliance on such an opinion was improper based on her submission of medical literature regarding possible limitations arising from Lyme disease.

1

F.      Adverse Credibility Finding as to Plaintiff's Testimony

2       Plaintiff next argues that the ALJ erred in discounting her testimony as not entirely credible.

3   Docket No. 18-1 at 27-29.   The Commissioner counters that Plaintiff's testimony was properly

4   discounted based on its inconsistency with medical opinion evidence, Plaintiff's treatment history, and

5   activities of daily living, as well as the inconsistencies within Plaintiff's testimony.   Docket No. 22 at

6   13-14.  The Commissioner has the better argument.

7       The ALJ is required to engage in a two-step analysis to evaluate credibility: (1) determine

8   whether the individual presented objective medical evidence of an impairment that could reasonably be

9   expected to produce some degree of pain or other symptoms alleged; and (2) if the individual has

10  satisfied the first step of the test with no evidence of malingering, the ALJ may only reject the

11  individual's testimony about the severity of the symptoms by giving specific, clear, and convincing

12  reasons for the rejection.  *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  To support a finding

13  of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate

14  that the individual's symptoms are less severe than she claims.  *See id.* at 592.  "Factors that an ALJ may

15  consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in

16  testimony or between testimony and conduct, daily activities, and unexplained, or inadequately

17  explained, failure to seek treatment or follow a prescribed course of treatment."  *Orn v. Astrue*, 495 F.3d

18  625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).  If an ALJ's adverse credibility

19  determination is supported by substantial evidence, the courts should not second-guess that

20  determination.  *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).

21      In this case, the ALJ provided sufficient reasons for discounting Plaintiff's testimony as to the

22  severity of her symptoms.  For example, the ALJ relied significantly on the fact that Plaintiff engaged

23  in daily activities inconsistent with her claimed limitations.  A.R. 36.  Substantial evidence supports that

24  finding, *see, e.g.*, A.R. 52-57, and that is a proper basis on which to discount a social security claimant's

25  testimony, *see, e.g.*, *Rollins*, 261 F.3d at 857.

26      The ALJ did not err in discounting Plaintiff's testimony.

27

28

12

1         G.    Adverse Credibility Finding as to Third-Party Testimony

2        Plaintiff lastly argues that the ALJ erred in discounting the letters submitted by her friends.

3    Docket No. 18-1 at 29-30. The Commissioner counters that the letters were properly discounted because

4    the witnesses rarely saw Plaintiff and their assertions were largely duplicative of Plaintiff's own

5    discredited testimony. Docket No. 22 at 14-15. The Commissioner has the better argument.

6        In rejecting the testimony from lay witnesses, such as a claimant's family and friends, an "ALJ

7    need only give germane reasons." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). This

8    standard is "much lower" than the standard applicable to rejecting a claimant's own testimony. *Revels*

9    *v. Berryhill*, 874  F.3d 648, 655 (9th Cir. 2017). Indeed, if an ALJ provided clear and convincing

10   reasons for rejecting a claimant's subjective complaints, and lay testimony was similar to such

11   complaints, then it follows that the ALJ also gave germane reasons for rejecting the lay witness

12   testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

13       The ALJ largely rejected the third-party letters because the witnesses rarely saw Plaintiff after

14   the alleged onset date. A.R. 35-36. There is substantial evidence supporting that conclusion, A.R. 278-

15   91, and an ALJ may permissibly discount third-party testimony on that basis, *Crane v. Shalala*, 76 F.3d

16   251, 254 (9th Cir. 1996). Moreover, the third-party witnesses provided allegations that largely

17   duplicated Plaintiff's own, so their testimony was properly rejected for the reasons already articulated

18   in discrediting Plaintiff's testimony. *See Valentine*, 574 F.3d at 694.

19       The ALJ did not err in discounting the third-party testimony.

20   **IV.    CONCLUSION**

21       Judicial review of the Commissioner's decision to deny disability benefits is limited to

22   determining whether the decision is free from legal error and supported by substantial evidence. It is

23   the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and

24   resolve conflicts in the evidence including differences of opinion. Having reviewed the Administrative

25   Record as a whole and weighed the evidence that supports and detracts from the conclusion, the

26   undersigned finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g)

27   and the ALJ did not commit legal error.

28

Based on the forgoing, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Reversal and/or Remand (Docket No. 18) be **DENIED** and that Defendant's Cross-Motion to Affirm (Docket No. 22) be **GRANTED**.

DATED:    February 20, 2018

_____
NANCY J. KOPPE
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

14